SHERRY SILVERMAN,

                      Plaintiff,

- versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                      Defendant.

MEMORANDUM
AND ORDER
13-CV-3062

A P P E A R A N C E S:

    LAW OFFICES OF HARRY J. BINDER AND CHARLES E. BINDER, P.C.
        60 East 42nd Street
        Suite 520
        New York, NY 10165
    By:    John Moran
        *Attorney for Plaintiff*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    James R. Cho, Assistant U.S. Attorney
        Meg Vasu, Student Intern
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Sherry Silverman brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging the decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), finding her not entitled to Social Security Disability Insurance ("SSDI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. The parties have cross-moved for judgment on the pleadings. The Commissioner seeks a judgment upholding her determination; Silverman seeks a reversal of that determination and a remand for

the calculation of disability benefits or, at a minimum, for further proceedings. For the reasons stated below, the Commissioner's motion is granted and Silverman's motion is denied.

BACKGROUND

A. *Initial Procedural History*

Silverman originally applied for disability insurance benefits on August 27, 2009. She claimed that she was unable to work due both to injuries sustained in a car accident in July of 2008, as well as conditions, including fibromyalgia, rheumatoid arthritis and osteoarthritis, that predated the accident. After the claim was initially denied, Silverman sought reconsideration and Administrative Law Judge ("ALJ") Andrew Weiss held a hearing on June 16, 2010. He denied the claim in a July 21, 2010 decision. R. 32-37. The agency's Appeals Council denied review on February 1, 2012, rendering the decision final, and Silverman filed a civil action to challenge the decision. The parties stipulated to a remand on August 9, 2012 for further administrative proceedings. *See Silverman v. Astrue*, No. 12-cv-01256-KAM (E.D.N.Y.). On August 28, 2012, the Appeals Council vacated the ALJ's previous decision and remanded the case so that he could, among other things, take additional evidence, further consider Silverman's residual functional capacity, and evaluate Silverman's subjective complaints. R. 438.

B. *The January 3, 2013 Decision Denying Benefits*

ALJ Weiss conducted a new hearing on December 18, 2012, at which he took testimony from Silverman and court-appointed medical and vocational experts. In a decision dated January 3, 2013, the ALJ once again denied benefits. R. 377-84. This action centers on the ALJ's reasoning in the January 3 decision. In part because of Silverman's testimony from the December 18, 2012 hearing, the ALJ found that Silverman did not have sufficiently recent earnings to qualify for Social Security disability insurance on January 1, 2008, the alleged onset date of her disability. The finding of ineligibility requires further explanation.

2

As relevant here, Silverman's tax records showed income of $13,853 in both 2001 and 2002, and income of $9,236 in 2003 and 2004. The records also showed no income at all in 2005 or later, no income in 2000, and income of less than $7,000 each year from 1995 through 1999. R. 90.

In the original 2010 hearing, Silverman alleged an onset date of her disability of January 1, 2008. R. 32. At that hearing, Silverman testified that she had worked answering phones for her husband's pool business in 2007 or 2008, but when the ALJ pointed out that Silverman had no record of income for those years, she said the work was in 2005 or 2006. R. 48. She also clarified that her work was done from home, and that it involved little more than taking phone messages for her husband. R. 48-50. In Silverman's words, "it wasn't really a job job, it was just – if he wasn't there, I'd take the message and pass it on to him." R. 48.

At the December 2012 hearing, Silverman testified that she last worked in 1998. R. 404. When the ALJ pointed out that Silverman's record showed income from 2004, Silverman replied that "The business was put in my name so the income generated from the business but I wasn't working. It was all put in my name. It was my husband's business and he put it in my name." R. 405. The ALJ expressed confusion, saying he had never seen a similar situation before. His questioning then moved to medical evidence of Silverman's disability and her alleged onset date. Silverman and her attorney indicated that the date – January 1, 2008 – was selected because, though Silverman had chronic health problems before that time (and in particular, before her July 2008 car accident), she only had significant medical documentation of her conditions starting in early 2008. R. 409-10.

The ALJ's written opinion, R. 377-84, relied on both work history and medical history to deny Silverman's claim. The opinion held that Silverman had not in fact worked at

3

any point after October 1, 1998. R. 381. Based on Silverman's work history from the several years preceding that date, the ALJ calculated that Silverman would be eligible for SSDI only for disabilities arising on or before March 31, 2000. Because Silverman had very little evidence of disability before 2008, the ALJ denied her benefits claim.

The Appeals Council declined to hear an appeal, rendering the ALJ's adverse decision the final decision of the Commissioner, *see DeChirico v. Callahan*, 134 F.3d 1177, 1179 (2d Cir. 1998), and this action followed.

## DISCUSSION

A. *The Legal Standards*

1. *Five-Step Analysis and Standard of Review*

A claimant seeking disability insurance benefits must establish that, "by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 1382c(a)(3)(B).

The Social Security regulations direct a five-step analysis for the Commissioner to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and

4

> work experience; the [Commissioner] presumes that a claimant
> who is afflicted with a "listed" impairment is unable to perform
> substantial gainful activity. Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, [she] has the residual functional
> capacity to perform past work. Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

*DeChirico*, 134 F.3d at 1179-80 (internal quotation marks omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process). The claimant bears the burden of proof in the first four steps, the Commissioner in the last (but only to show that jobs exist in the national or local economies that the claimant can perform given her RFC and vocational factors). *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

The Commissioner decides whether the claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1527(e)(1). Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the record contains evidence which "a reasonable mind might accept as adequate to support [the Commissioner's] conclusion," this Court may not "substitute its own judgment for that of the [Commissioner] even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quotation marks omitted).

2. *Other Relevant Law*

In his second decision, the ALJ found that Silverman was ineligible for benefits because of her work history.

SSDI is conceived of as an insurance system, so in order to be eligible for SSDI benefits, an applicant must be not only disabled, but also insured. *See generally Arnone v.*

5

*Bowen*, 882 F.2d 34, 37 (2d Cir. 1989) (describing scheme); 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). To be insured in a given quarter, an applicant must meet two requirements: she must have fully insured status, and she must meet a work recency requirement.[1]

Here, "fully insured status" means that the applicant must have recorded one quarter of work for each year from the age of 21 until the onset of disability; this is what the agency calls the "1-for-4 rule" (that is, one quarter out of each four). *See* 20 C.F.R. § 404.132(a).

The work recency requirement is governed by the "20/40 rule,"[2] which states that an applicant is eligible in a particular quarter if she has accumulated twenty quarters of coverage in the forty-quarter period ending in that quarter. *See* 20 C.F.R. § 404.130(b). For someone who works continuously for at least five years and then totally stops working, this means that the person must have last worked at most five years before the date of application. The final day of the final quarter satisfying these requirements is referred to as the "date last insured" ("DLI").

B.      *Analysis*

Silverman makes two main arguments challenging the ALJ's determination that she was not eligible for SSDI benefits when her disability began. First, she argues that the ALJ was without authority to revise her DLI. Second, she argues that the ALJ failed to properly evaluate the available medical evidence of the date of her disability's onset.

1.  *Authority to Recalculate the Date Last Insured*

Silverman argues that both the terms of the Appeals Council's remand and other legal authority forbade the ALJ from recalculating her DLI.

---

[1] An applicant may also meet the second test under rules, not relevant here, governing statutory blindness. *See* 20 C.F.R. § 404.130(e) (citing definition of blindness under § 404.1581).

[2] Separate (and analogous) rules govern claims involving disability before the age of 31, not relevant here. *See* 20 C.F.R. §§ 404.130(c), (d).

It is true that the Appeals Council's remand order did not expressly direct the ALJ to examine the DLI. But the agency's regulations governing remands from the Appeals Council state that an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). As the first step to fulfill the Appeals Council's direction to, among other things, evaluate Silverman's subjective complaints, *see* R. 438, the ALJ took new testimony from Silverman. The testimony included meaningful new evidence relevant to Silverman's DLI – for example, her own testimony that she did not work after 1998. R. 404. That testimony contrasts starkly with Silverman's testimony at the first hearing, in which she first stated that she had worked in 2007 or 2008, and upon further questioning, instead in either 2005 or 2006 (even though she also minimized her job role). R. 48. Under the circumstances, recalculating Silverman's DLI was not only "not inconsistent with" the remand order, but it was the logical path for the ALJ to take.

Silverman also argues that regulations prohibit recalculation of the DLI. She notes that under regulation, once a certain period of time has passed, the agency's income records are "conclusive evidence" of work history:

> After the time limit ends for a year – If SSA records show an entry of self-employment income or wages for an employer for a period in that year, our records are conclusive evidence of your self-employment income in that year or the wages paid to you by that employer and the periods in which they were received unless one of the exceptions in § 404.822 applies . . . .

20 C.F.R. §404.803(c)(1). The "time limit" is "a period of time 3 years, 3 months, and 15 days after any year in which you received earnings." § 404.802. The Second Circuit has construed this time limit strictly, rejecting an applicant's argument that it should be subject to equitable tolling. *See Acierno v. Barnhart*, 475 F. 3d 77 (2d Cir. 2007). According to Silverman, this

7

strictness should in fairness be applied symmetrically: just as an applicant for benefits cannot challenge records from 2005 in 2012, neither may the Commissioner.

But this argument ignores the exceptions permitting correction past the time limit. The Commissioner argues that two exceptions are relevant: the agency "may change any entry which was entered on the earnings record as the result of fraud," and the agency "may correct errors in SSA records resulting from earnings being entered for the wrong person or period." 20 C.F.R. § 404.822(e)(3) & (4). Without deciding whether the ALJ had sufficient evidence to deem Silverman's post-1998 earnings records fraudulent, I conclude that he was warranted in finding that the records "result[ed] from earnings being entered for the wrong person or period."

Specifically, the ALJ's opinion held that the activity underlying the claimed post-1998 earnings records "did not constitute any significant work activity on [Silverman's] part," and the earnings records were instead "the result of bookkeeping decisions to place her as a participant in her husband's business." R. 308. That conclusion was supported by Silverman's own testimony: she said the work she performed was trivial, and her husband placed the earnings in her name for tax purposes. *See, e.g.,* R. 405 ("The business was put in my name so the income generated from the business but I wasn't working. It was all put in my name. It was my husband's business and he put it in my name."); R. 419 ("When I filled out the income taxes, in order to put everything under my name, that's what I had to put, secretarial, answered phone – yeah that's what I think it was.").[3] Other courts have upheld agency decisions modifying income distribution between husband and wife. *See, e.g., Rand v. Sullivan*, 924 F.2d 159, 162-63 (9th Cir. 1990); *Royer v. Apfel*, No. IP99-1387-CH/G, 2000 WL 1707955, at *5-6 (S.D. Ind. Oct. 16,

---

[3] Although a lawyer's argument is not evidence, Silverman's own attorney argued that "[i]t's not a job if she's answering the phone two times a week and taking a message for somebody." R. 417.

8

2000). The ALJ's decision to revise the DLI was authorized by the "wrong person" exception and supported by substantial evidence.

### 2. *Evaluation of Medical Evidence*

Silverman also argues that the agency failed to properly evaluate medical evidence. I find this contention to be without merit.[4]

The ALJ did not err when he found that Silverman presented virtually no evidence dating from before 2008 of her disability. The only records of that time include an x-ray from 2006 (with a negative result), R. 250; an opinion letter written in 2012 by Silverman's internist, Dr. Shirazi, opining that Silverman had been unable to work full-time since 2002, R. 549-50; and a letter by an orthopedist, Dr. Goldman, opining that Silverman had been disabled as early as 1998, R. 539. The ALJ reasonably concluded that Silverman's own testimony, as well as opinion evidence produced many years later based on Silverman's recollections and discussions with doctors, was too speculative to form a basis for an onset date before 2008. Thus, despite significant evidence of serious disability since 2008, Silverman has not demonstrated that her condition began within the time period necessary under the SSDI program.

---

[4] Silverman notes that in his second decision, the ALJ lists several different dates as the DLI: December 31, 2000 (R. 378); March 31, 2000 (R. 380, 381); March 31, 2002 (R. 384); and December 31, 2008 (R. 384). It is true that the decision is less than clear on this score. A review of the 2010 and 2012 orders shows that the December 31, 2000 and 2008 dates are likely carried over from the first order, and are best seen as typos. *Compare* R. 32, 34, 36 *with* R. 378, 384. As between the March 31, 2000 and 2002 dates, the ALJ did not lay out calculations demonstrating which one he believed was controlling. Nonetheless, because Silverman has given no medical evidence pertaining even to the later date, the confusion – and the error, if any – is without consequence here.

CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, and Silverman's cross-motion is denied.


So ordered.


John Gleeson, U.S.D.J.

Dated: January 16, 2014
      Brooklyn, New York